J-S25022-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVID MICHAEL SHADLE | |
| Appellant | No. 1543 WDA 2014 |

Appeal from the Order dated August 15, 2014
In the Court of Common Pleas of Westmoreland County
Criminal Division at No: CP-65-CR-0001469-2006

BEFORE: BENDER, P.J.E., STABILE, and PLATT,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED JUNE 29, 2015**

Appellant David Michael Shadle *pro se* appeals from the August 15, 2014 order[1] of the Court of Common Pleas of Westmoreland County ("PCRA court"), which dismissed as untimely Appellant's request for collateral relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46. Upon review, we affirm.

A prior panel of this Court summarized the facts and procedural history of this case as follows.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] We changed the caption to reflect that Appellant appealed the August 15, 2014 order of the PCRA court. Appellant also appealed the August 28, 2014 order of the PCRA court, which denied his *pro se* request to conduct PCRA discovery by deposing Dr. Cyril Wecht. Given our conclusion below that the PCRA court lacked jurisdiction to entertain Appellant's instant PCRA petition, we need not address the discovery issue.

On March 16, 2007, Appellant was convicted by a jury of first-degree murder and related charges for the death of his ex-girlfriend. On June 11, 2007, Appellant was sentenced to life in prison. Appellant's judgment of sentence was affirmed by this Court on October 27, 2008. *See Commonwealth v. Shadle*, 964 A.2d 445 (Pa. Super. 2008) (unpublished memorandum).

On October 7, 2009, Appellant filed a timely *pro se* PCRA petition. Counsel was appointed and an amended petition was filed on December 9, 2009, raising two claims: 1) whether trial counsel was ineffective for failing to object to the introduction of prior bad acts and/or request a limiting instruction; and, 2) whether appellate counsel was ineffective for failing to file a petition for allowance of appeal to the Supreme Court following the October 27, 2008 memorandum. A hearing on the petition was held on January 25, 2010. On June 8, 2010, the PCRA court granted Appellant's request to file a petition for allowance of appeal to the Supreme Court *nunc pro tunc*, but denied Appellant relief on his other issue. Appellant filed a petition for allowance of appeal *nunc pro tunc* to the Supreme Court and a notice of appeal to this Court from the PCRA order. This Court quashed the appeal concluding that "[b]ecause the PCRA court granted Appellant reinstatement of his right to file a petition for allowance of appeal *nunc pro tunc*, the court's consideration of Appellant's additional issue did not result in a disposition Appellant could appeal." *Commonwealth v. Shadle*, 1106 WDA 2010, unpublished memorandum, at 3 (Pa. Super. filed March 8, 2011). Accordingly, this Court directed Appellant to "raise claims of ineffective assistance of counsel by filing another PCRA petition following the disposition of his petition for allowance of appeal." *Id*. Our Supreme Court denied the petition for allowance of appeal on March 16, 2011.[2] *Commonwealth v. Shadle*, 20 A.3d 487 (Pa. 2011).

On April 25, 2011, Appellant filed [another] PCRA petition alleging that trial counsel was ineffective for failing to object to the introduction of prior bad acts and/or request a limiting instruction, and also that appellate counsel was ineffective for failing to raise the issue in Appellant's initial direct appeal. The PCRA court denied the petition on May 6, 2011[.]

_____

[2] To the extent the PCRA court suggests Appellant's judgment of sentence became final on April 16, 2011, thirty days after March 16, 2011, we disagree. Appellant's judgment of sentence became final on June 16, 2011, **ninety days** following our Supreme Court's denial of his petition and the time for Appellant to file a petition for writ of *certiorari* with the United States Supreme Court had expired. *See* 42 Pa.C.S.A. § 9545(b)(3); U.S. Sup. Ct. R. 13. Appellant had one year from June 16, 2011 to file his PCRA petition. *See* 42 Pa.C.S.A. § 9545(b).

*Commonwealth v. Shadle*, No. 830 WDA 2011, unpublished memorandum at 1-3 (Pa. Super. filed December 30, 2011). On appeal, the prior panel of this Court affirmed the PCRA court's denial of Appellant's PCRA petition. *Id.* at 5. Appellant appealed the panel's ruling to our Supreme Court, which denied his petition for allowance of appeal on July 23, 2012. *Commonwealth v. Shadle*, 49 A.3d 443 (Pa. 2012).

On September 20, 2012, Appellant *pro se* filed the instant PCRA petition, alleging, *inter alia*, that the mathematical formula used by Dr. Cyril Wecht conflicted with Newton's Second Law of Motion. Recognizing that his PCRA petition was untimely, Appellant raised the newly-discovered evidence exception to the PCRA time-bar. In support, Appellant argued he did not discover Dr. Wecht's use of the incorrect mathematical formula until August 20, 2012, when a "jailhouse lawyer" reviewed the formula in question. Appellant's PCRA Petition, 9/24/12, at 4. Alternatively, Appellant also raised the governmental interference exception, arguing "the Commonwealth refused [Appellant] Notice of this 'expert' testimony (in physics) and left, unchecked, the fraud, albeit unintentional or otherwise, committed upon the court, and [Appellant]." *Id.* at 6. On the same day, the PCRA court appointed James Robinson, Esquire, to represent Appellant. On January 7, 2014, Attorney Robinson filed a no-merit letter and an attendant motion to withdraw as PCRA counsel. Following a hearing, the PCRA court granted Attorney Robinson's motion to withdraw on May 22, 2014.

On August 15, 2014, the PCRA court dismissed Appellant's PCRA petition without a hearing, concluding it was facially untimely under the PCRA and did not meet any timeliness exceptions. The PCRA court found Appellant filed the PCRA petition on September 20, 2012, even though he had one year from June 16, 2011 to file the petition. The PCRA court addressed, *inter alia,* Appellant's newly-discovered evidence exception argument. In so doing, the PCRA court concluded Dr. Wecht's **testimony** was a matter of public record that cannot be said to be "unknown."[3] PCRA Court Opinion, 8/15/14, at 10 (citing **Commonwealth v. Taylor**, 67 A.3d 1245, 1248-49 (Pa. 2013)). The PCRA court noted:

> Dr. Wecht's testimony occurred in 2007 at the time of trial. The trial transcript has been available since at least 2008, when his case was before the Pennsylvania Superior Court. The laws of physics and motion have been in existence for many, many years prior to that. The fact that this "issue" was not discovered and raised by [Appellant] or any of his previous counsel does not mean that it could not have been discovered or raised. Both facts are matters of public record and cannot be considered to have been unknown.

PCRA Court Opinion, 8/15/14, at 10. Accordingly, the PCRA court determined it lacked jurisdiction over Appellant's PCRA petition because Appellant failed to satisfy the newly-discovered evidence requirements of

---

[3] Testimony offered at a public sentencing hearing was a matter of public record ascertainable in the exercise of due diligence. **See Commonwealth v. Hawkins,** 953 A.2d 1248, 1255 (Pa. 2006).

Section 9545(b)(1)(ii).[4]  Appellant timely appealed to this Court.  Following Appellant's filing of a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, the PCRA court issued a Pa.R.A.P. 1925(a) opinion on October 14, 2014, incorporating its August 15, 2014 opinion dismissing Appellant's PCRA petition.

On appeal,[5] Appellant essentially repeats the same issues.  After careful review of the parties' briefs, the record on appeal, and the relevant case law, we conclude that the PCRA court's August 15, 2014 opinion authored by the Honorable Rita Donovan Hathaway, thoroughly and adequately disposes of Appellant's appeal.  **See** PCRA Court Opinion, 8/15/14, at 8-13.  We direct that a copy of the PCRA court's August 15, 2014 opinion be attached to any future filings in this case.

Order affirmed.

_____

[4] The PCRA court also rejected Appellant's governmental inference exception argument, concluding that Appellant "failed to establish how the government interfered with and impeded his ability to raise the evidence of Dr. Wecht's misstatement of Newton's Second Law of Motion under the PCRA in a timely fashion."  PCRA Court Opinion, 8/15/14, at 12.

[5] "In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination 'is supported by the record and free of legal error.'" **Commonwealth v. Fears**, 86 A.3d 795, 803 (Pa. 2014) (quoting **Commonwealth v. Rainey**, 928 A.2d 215, 223 (Pa. 2007)).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/29/2015

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA - CRIMINAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | ) | |
| | ) | |
| vs. | ) | No.   1469 C 2006 |
| | ) | |
| DAVID M. SHADLE, | ) | |
| Defendant. | ) | |

## ORDER OF COURT

AND NOW, this ⁄5 day of August, 2014, upon consideration of the defendant's *pro-se* Motion for Post Conviction Collateral Relief, after hearing Defendant's argument presented in open court, the written pleadings filed by both the Defendant and the Commonwealth, and upon consideration of the comprehensive No-Merit letter submitted by PCRA counsel, James E. Robinson, Esq., (a copy of which has been attached to this Order) and after a thorough review of the record in this case, it appears to this Court that there are no genuine issues of material fact, no entitlement to relief and no purpose to be served in further proceedings.

## PROCEDURAL HISTORY

The defendant, David M. Shadle ("Shadle") was charged by Criminal Information filed on April 26, 2006, at No. 1469 C 2006 in the Court of Common Pleas of Westmoreland County, Pennsylvania with Murder of the First Degree (18 Pa.C.S. 2502(a)), Criminal Homicide (18 Pa.C.S. §2501(a)), Theft by Unlawful Taking (18 Pa.C.S. §3921(a)), Receiving Stolen Property (18 Pa.C.S. §3925(a)) and Access Fraud Device (18 Pa.C.S. §4106 (a)(1)(ii)).

At the trial held before Judge Richard E. McCormick, Jr., Shadle was represented by attorneys Chris Haidze and Gregory Cecchetti.  He was convicted by the jury on March 16, 2007 at all counts.  Shadle was sentenced on June 11, 2007 to the mandatory sentence of life

1

imprisonment. Because he expressed a desire to raise claims of ineffective assistance of counsel against his trial attorneys, Judge McCormick agreed to appoint new counsel to represent the defendant. (ST 21-25).[1] Attorney Jeffrey Monzo, Esq. was appointed to represent Shadle the following day.

Shadle, through his new attorney, filed post-sentence motions for a new trial on June 21, 2007. Therein, Shadle claimed that he was entitled to a new trial because the verdict was contrary to the weight of the evidence, and claimed that his trial counsel were ineffective for failing to call forensic psychiatrist Dr. Donald P. Breneman as a witness for the defense regarding a report that he had authored as to intoxication/diminished capacity as a defense, and for failing to develop the defense of heat of passion as to First Degree Murder. A hearing was held before Judge McCormick on October 17, 2007, at which time Attorney Cecchetti and Attorney Haidze testified. Shadle's Motion for a New Trial was denied by Judge McCormick on November 7, 2007.

Shadle thereafter filed a timely notice of appeal to the Superior Court, raising the issue of counsels' ineffectiveness for failing to call Dr. Breneman. His conviction and judgment of sentence were affirmed by the Superior Court of Pennsylvania by memorandum Order issued on October 27, 2008. No subsequent Petition for Allowance of Appeal was filed.

Shadle filed a pro-se PCRA petition on October 7, 2009 raising claims of ineffective assistance of trial counsel as follows:

1. Failed to put a professional witness on the stand.
2. Did not have murder trial experience.
3. Didn't bring out "information" on cross-examination of Commonwealth's witnesses (unspecified issue).
4. Misguided him not to take the stand.
5. Failed to prepare character witnesses.

---

[1] Numerals in parenthesis preceded by the letters "ST" refer to specific pages of the transcript of the sentencing held in this matter on June 11, 2007 before Judge Riachrd E. McCormick, Jr., and made a part of the record in this case.

2

6. Failed to "use the defense I told them to use."

He also raised the following claims of ineffective assistance of post-sentence/appellate counsel Jeffrey Monzo, Esq.:

1. Failed to file direct appeal; instead, elected to file a PSM alleging ineffective assistance of counsel.
2. Only used one issue to establish ineffective assistance of counsel.
3. Failed to communicate with defendant during appeal.
4. Failed to appeal Superior Court decision to Supreme Court.
5. Failed to give defendant copies of transcripts.
6. Failed to show "provocation" in appeals.

Judge McCormick appointed Jeffrey Miller, Esq., to represent the defendant in his first PCRA proceeding.[2] After reviewing the case, Attorney Miller filed an Amended PCRA Petition on December 9, 2009. Therein, the defendant raised two issues: whether trial counsel was ineffective for failing to object to the introduction of prior bad acts evidence and for failing to request a limiting instruction regarding that evidence; and, whether post-sentence/appellate counsel was ineffective for failing to file a Petition for Allowance of Appeal to the Pennsylvania Supreme Court following the Superior Court's October 27, 2008 Memorandum Order. Following a hearing, this court granted in part and denied in part Shadle's first PCRA petition, granting Shadle's right to file a Petition for Allowance of Appeal to the Supreme Court, but denying his claim to post-collateral relief on the issue of trial counsel's failure to object to the introduction of prior bad acts evidence and failure to request a limiting instruction regarding that evidence.[3]

---

[2] The case was reassigned to the undersigned on November 25, 2009.

[3] Based upon the evidence presented at the evidentiary hearing, the court was unable to find that Jeffrey Monzo, Esq. was ineffective for failing to file a Petition for Allowance of Appeal Nunc Pro Tunc in this matter. However, given the severity of the crimes for which the defendant was convicted and the mandatory life sentence which was imposed in this case, in the interests of justice, the court granted the defendant's requested relief and permitted him to file a Petition for Allowance of Appeal to the Supreme Court of Pennsylvania Nunc Pro Tunc, appealing the decision of the Superior Court filed on October 27, 2008.

3

Shadle appealed the June 8, 2010 Order of Court denying his requested relief to the Superior Court, and simultaneously filed a Petition for Allowance of Appeal in the Supreme Court of Pennsylvania. The Superior Court quashed his appeal, noting that they had no jurisdiction to reach a conclusion on the merits of the issue raised by Shadle regarding trial counsel's ineffectiveness as his right to seek review in the Supreme Court had been granted. The Superior Court specifically noted that "Appellant may raise claims of ineffective assistance of counsel by filing another PCRA Petition following the disposition of his petition for allowance of appeal." His Petition for Allowance of Appeal was denied by the Supreme Court of Pennsylvania on March 16, 2011, and his judgment of sentence became final thirty days thereafter.

Shadle, through attorney Miller, filed a second PCRA Petition on April 25, 2011, raising those same allegations of the ineffective assistance of counsel as he had previously raised. This PCRA, which was treated by the court as a first PCRA given the procedural history of the case, was denied by Order of Court dated May 6, 2011. Shadle appealed the denial of his PCRA Petition, and the Superior Court affirmed this court's denial of his request for relief under the PCRA on December 12, 2011. His subsequent Petition for Allowance of Appeal was denied by the Pennsylvania Supreme Court on July 23, 2012.

Shadle filed a *pro-se* PCRA Petition on or about September 30, 2012. Even though this was a second or subsequent PCRA Petition, Attorney James Robinson was appointed to represent him. After receiving numerous extensions of time within which to file an Amended PCRA Petition or a No-Merit letter, Attorney Robinson filed a comprehensive No-Merit letter on November 7, 2014. A hearing was held following Shadle's submission of a *pro-se* "Objection to the No-Merit Letter filed by Attorney Robinson.

4

## FACTUAL HISTORY

The facts presented at trial established the following:

David M. Shadle was involved in a romantic relationship with Jessica Aaron, a 19 year-old sophomore at Indiana University of Pennsylvania from approximately September 2005 through January 2006. The initially loving relationship eventually deteriorated into what was described by Jessica's roommate, Nicole Hofrichter, as "more fighting, more intensity in fighting, a lot of yelling, screaming." (TT 80-81).[4] Hofrichter testified that Jessica had left their dorm room on the morning of January 24, 2006 to pick up David Shadle. When Jessica returned at approximately 5:30 p.m., she was hysterical, and took Hofrichter to see her car windshield, which had been smashed. (TT 83-84). Hofrichter never saw Shadle with Jessica again. (TT 85).

Trooper Douglas Snyder testified that he was dispatched to the Advance Auto Supply in Indiana, Pa., for a report of a boyfriend/girlfriend dispute and a broken windshield. (TT 287-288) He testified that he observed Shadle in Jessica's car, spoke with him, and that he admitted to breaking the windshield. (TT 289-291). He transported Shadle to the State Police Barracks in Indiana and issued him a non-traffic citation for the damage to the windshield. Shadle pled guilty to that citation and paid a fine on February 7, 2006. (TT 291-297).

Nicole Hofrichter testified that she knew that Shadle called Jessica repeatedly on her cell phone after the January 24, 2006 incident. She testified that Jessica would sometimes answer the phone, sometimes she would hang up, and eventually, she ignored Shadle's calls. (TT 85-88). Hofrichter indicated that the last time she saw Jessica Aaron was about 6:30 p.m. on February 27, 2006. (TT 89).

---

[4] Numerals in parenthesis preceded by the letters "TT" refer to specific pages of the transcript of the trial in this mater, held before Judge Richard E. McCormick, Jr., and made a part of the record herein.

5

Shadle resided at the time with his uncle, George Cline, in Slickville, Westmoreland County, Pennsylvania. (TT 98-99). Cline testified that he was familiar with Jessica Aaron, knew what type of car she drove, and knew that she was Shadle's girlfriend. (TT 102-103). Cline stated that Shadle and Jessica came into his Slickville house around 6:00 p.m., spent some time there, and then left for dinner. (TT 104-105). He testified that he was watching television when they returned around 10:30 p.m. and went straight to Shadle's room. Cline heard the two arguing in Shadle's room, so he turned up the volume on the television and eventually fell asleep. (TT 108-109).

Cline saw Shadle emerge from his room at about 1:00 p.m. He told Cline that he would return in an hour, and then drove away in Jessica's car. He never again returned to the residence. (TT 115-116).[5] Cline testified that as he sat down to eat dinner, he recalled that Jessica had not left with Shadle, so he thought to wake her up and see if she wanted something to eat. When Jessica did not answer his knocks on the door, Cline unlocked the door and discovered Jessica's body lying on the floor of Shadle's bedroom. (TT 117-119). He recalled that she had a sleeping bag over her body, and that her head was covered with a plastic grocery bag. Cline and his girlfriend immediately called 9-1-1. He believed that it was approximately 4:30 p.m. when he discovered Jessica's body. (TT 119-121).

Members of the Pennsylvania State Police arrived at the Cline residence in response to the 9-1-1 call. Trooper Stepinski testified that he processed and photographed the scene on February 28, 2006. He testified that his examination of Jessica's body showed that the bag which covered her head was actually tied tightly, "pulled tight and tied to a knot on the left cheek... it was tight around her neck." (TT 191). The bag was filled with blood, and Jessica's

---

[5] There was additional evidence that established that Shadle had used Jessica's S&T bank card in Delmont, Westmoreland County on February 28, 2006 at approximately 7:55 p.m. as captured through ATM camera surveillance. He withdrew $300.00 in cash from Jessica's account. (TT 478-486).

6

face and head showed signs of trauma, including lacerations and bruising. (TT 192-193). An autopsy was performed by Dr. Cyril Wecht, who opined that although Jessica had sustained injuries to her head which resulted in a fracture of her skull and swelling in her brain, the cause of her death was asphyxiation due to manual strangulation and smothering. (TT 399-400, 404).

Shadle was arrested by Pennsylvania State Police officers on March 1, 2006. Following his arrest, Shadle made numerous verbal and written statements regarding the death of Jessica Aaron. All of Shadle's statements consistently related that he and Jessica had had an argument on the evening of February 27th. He stated that Jessica became enraged and came after him and started to claw and scratch at him. He stated that Jessica jumped at him, but that he moved out of the way and Jessica hit her head on a piece of furniture.[6] She started to bleed and was unresponsive. Shadle then reported that he shook her to wake her up, but she was not breathing. He stated that he placed the plastic bag under her head to catch the blood, and, eventually, he left the residence. (TT129-130, 307-309, 334-335, 346-348, 351-353). Joseph Lee Cline, Jr., Shadle's cousin, testified that Shadle had called him on February 28th and told him that he was going to stop at his house at about 1:30 p.m. Indeed, Shadle arrived as he said he would, driving Jessica's car. The two watched television and played video games until they went out to get beer and cigarettes. Joseph Lee Cline Jr., testified that Shadle told him that Jessica had jumped off the bed at him and hit her head, and she went limp. He told him that Jessica was hurt. When he was told to call the police for help, he stated that he was scared and, eventually, asked for Cline Jr.'s help to "get rid of" Jessica's car and her body. (TT 161-175).

---

[6] To Tpr. Danny Moy, he stated that Jessica hit her head on an end table. (TT 309). To Cpl. Kenny Karas, he stated that it was the dresser. (TT 334). In a letter written to his uncle George Cline, it was the TV stand. (TT 129).

## DISCUSSION:

Shadle's present Petition for post-conviction relief under the Post-Conviction Relief Act (42 Pa.C.S. §9541, *et. seq.*) is his third such petition, his second since his judgment of sentence became final. Any petition filed under the Post-Conviction Relief Act, including second and subsequent petitions, must be filed within one year of the date that the judgment of sentence becomes final. *42 Pa.C.S. §9545(b)(2).* To be eligible for post-conviction relief, a PCRA petition, including second and subsequent Petitions, must be filed within one year from the date that the judgment became final. *42 Pa.C.S. §9545(b)(1); Pa.R.Crim.P. Rule 901.* "A judgment becomes final at the conclusion of direct review or at the expiration of time for seeking the review." *Commonwealth v. Breakiron,* 566 Pa. 323, 329, 781 A.2d 94, 97 (2001) *(citing* 42 Pa.C.S. §9545(b)(3)). Shadle's judgment of sentence became final on March 16, 2011. The first PCRA Petition, filed on April 25, 2011, was therefore timely. The instant PCRA Petition, filed on September 20, 2012, is clearly untimely; therefore, unless an exception applies, Shadle is not eligible for relief. Indeed, unless such an exception applies, this court lacks jurisdiction to entertain Shadle's untimely-filed second PCRA petition.

Certain exceptions set forth in the Post-Conviction Relief Act can act to excuse the untimely filing of a PCRA petition:

> (1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
>
> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

8

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

(2) Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.

*42 Pa.C.S.A. §9545(b).*

"It is imperative to note that the timeliness requirements of the PCRA are jurisdictional in nature. Statutory time restrictions may not be altered or disregarded to reach the merits of the claims raised in the petition." *Commonwealth v. Harris*, 972 A.2d 1196, 1199 (Pa.Super.2009) (internal citations omitted). *See also, Commonwealth v. McKeever*, 947 A.2d 742 (Pa.Super. 2008).

Further,

Title 42 Pa.C.S.A. § 9545(b)(1) requires that any PCRA petition, including a second or subsequent petition, must be filed within one year of the date that the petitioner's judgment of sentence becomes final, unless a petitioner pleads or proves that one of the exceptions to the timeliness requirement enumerated in 42 Pa.C.S.A. § 9545(b)(1)(i)-(iii) is applicable. The timeliness requirement is mandatory and jurisdictional; therefore, no court may disregard, alter, or create equitable exceptions to the timeliness requirement in order to reach the substance of a petitioner's arguments. *See Commonwealth v. Davis*, 916 A.2d 1206 (Pa.Super.2007).

*Commonwealth v. McKeever*, 947 A.2d 782, 784-785 (Pa.Super. 2008). Although this second PCRA Petition is untimely filed, Shadle argues that the newly discovered evidence exception excuses the untimely filing. *42 Pa.C.S.A. §9545(b)(1)(ii).*

In support of this theory, Shadle suggests that Dr. Cyril Wecht's testimony at trial, which referenced Newton's Second Law of Motion, discredited Shadle's account of the events that

9

transpired in the Cline household that led to the death of Jessica Aaron. Shadle contends that Dr. Wecht misstated Newton's Second Law of Motion, and that this incorrect recitation of Newton's formula caused the jury to disbelieve his explanation of these events. Absent this testimony, he believes, the jury would not have convicted him of first degree murder.

Assuming, arguendo, that Dr. Wecht did misstate the formula that is Newton's Second Law of Motion, it is clear that the newly discovered evidence exception to the timeliness requirements of the PCRA does not apply here. In order to qualify for the exception set forth in 42 Pa.C.S.A. §9545(b)(1)(ii),

> to constitute facts which were unknown to a petitioner and could not have been ascertained by the exercise of due diligence, the information must not be of public record and must not be facts that were previously known but are now presented through a newly discovered source.

*Commonwealth v. Edmiston,* 619 Pa. 549, 570-571, 65 A.3d 339, 352 (Pa. 2013). It is abundantly clear that Shadle's claim cannot meet this requirement. The Pennsylvania Supreme Court has repeatedly found that matters of public record cannot be said to be "unknown." *See Commonwealth v. Taylor,* 67 A.3d 1245 (Pa.2013); *Commonwealth v. Lopez,* 51 A.3d 195, 196 (Pa.2012) ( *per curiam* ); *Commonwealth v. Chester,* 586 Pa. 468, 895 A.2d 520, 523 (2006); *Commonwealth v. Fisher,* 582 Pa. 276, 870 A.2d 864 (2005). *Commonwealth v. Whitney,* 572 Pa. 468, 817 A.2d 473, 476 (2003); *Commonwealth v. Lark,* 560 Pa. 487, 746 A.2d 585, 588 n. 4 (2000). Dr. Wecht's testimony occurred in 2007 at the time of trial. The trial transcript has been available since at least 2008, when his case was before the Pennsylvania Superior Court. The laws of physics and motion have been in existence for many, many years prior to that. The fact that this "issue" was not discovered and raised by Shadle or any of his previous counsel does not mean that it could not have been discovered or raised. Both facts are matters of public record and cannot be considered to have been unknown. Therefore, Shadle cannot meet the

10

requirements of the time-bar exception found in 42 Pa.C.S.A. §9545(b)(1)(ii), and this court does not have jurisdiction to entertain his petition for Post-Conviction Relief.[7]

In the alternative, Shadle suggests that his untimely filing of the PCRA should be excused based upon governmental interference exception to the timeliness requirement set forth in 42 Pa.C.S.A. §9545(b)(1)(i). This is so because, he contends, "the Commonwealth refused defendant Notice of this 'expert' testimony (in physics) and left, unchecked, the fraud, albeit unintentional or otherwise, committed upon the court, and defendant." However, Shadle's argument in the regard fails as well. As stated previously, any claims under the PCRA must be raised within one year of the date that the judgment of sentence became final, or by April 15, 2012. The governmental interference that is contemplated is not alleged prosecutorial

---

[7] Even if Shadle could overcome the jurisdictional hurdle in this matter, his claim for relief based upon "newly-discovered evidence" is meritless.

> [The PCRA petitioner] must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

*Commonwealth v. Medina*, 92 A.3d 1210, 1218 (Pa.Super.,2014) (citing *Commonwealth v. Pagan*, 597 Pa. 69, 950 A.2d 270, 292 (2008), *cert. denied, Pagan v. Pennsylvania*, 555 U.S. 1198, 129 S.Ct. 1378, 173 L.Ed.2d 633 (2009); *accord Commonwealth v. Castro*, 55 A.3d 1242, 1246 (Pa.Super.2012) (en banc), *appeal granted*, 65 A.3d 291 (Pa.2013)).

Dr. Wecht testified that the cause of death in this case was asphyxiation due to manual strangulation and smothering. (TT 399-400, 404). While it is true that he noted that Jessica Aaron had sustained injuries to her head which resulted in a fracture of her skull and swelling in her brain, these injuries were not the cause of death. The statement or misstatement of Newton's Second Law of Motion was in no way determinative of his expert opinion as to cause of death. Had Shadle pointed out an error in his recitation of the Law of Motion, it would have served only to impeach Dr. Wecht's credibility at trial, and would not have resulted in a different verdict given the volume of evidence against Shadle.

11

misconduct at trial. Rather, in order to establish the requirements under the exception set forth in

42 Pa.C.S.A. §9545(b)(1)(i),

> the petitioner must plead and prove that the failure to previously raise these claims was the result of interference by government officials, and that the information could not have been obtained earlier with the exercise of due diligence.

*Commonwealth v. Hawkins*, 598 Pa. 85, 93, 953 A.2d 1248, 1253 (2006). Shadle has failed to

establish how the government interfered with and impeded his ability to raise the evidence of Dr.

Wecht's misstatement of Newton's Second Law of Motion under the PCRA in a timely fashion.

Further, this court has previously determined that this fact, alleged as "newly-discovered" by

Shadle, is not evidence that could not have been discovered by him or any of his prior counsel

within the time periods allowable under the PCRA.[8]

Shadle's also suggests that he is entitled to review of his post-conviction claims due to an

alleged "newly-discovered" conflict of interest on the part of Jeffery Monzo, Esq. Shadle

contends that he is entitled to post-conviction relief because Attorney Monzo was employed by

Belden Law, a Greensburg law firm that also represented the Westmoreland County Prison. In

his written response to the Commonwealth's Brief in Opposition to PCRA Petition, Shadle

withdraws this issue. However, for the same reasons set forth previously, Belden Law's

representation of the Westmoreland County Prison was a matter of public record and certainly

could have been discovered through an exercise of due diligence. *See, e.g., Commonwealth v.*

*Taylor*, 67 A.3d 1245 (Pa. 2013)(counsel's representation of third party in unrelated matters was

a matter that was docketed, filed with the clerk of court, and readily available; therefore, the

---

[8] Having failed to raise this allegation in his post-sentence motion, in his direct appeal, or in either of his two previous PCRA Petitions, the allegation of error has been waived. A defendant is not eligible for post-conviction relief where the claimed allegation of error has been previously raised and litigated or has been waived. *42 Pa.C.S. §9543(a)(3)*. An issue has been waived "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S.A. § 9544(b).

evidence presented would not meet the requirement the information be unknown at the time the petition was filed). Therefore, even had Shadle not withdrawn this issue, this court lacks jurisdiction to entertain the merits of this claim.

Finally, Shadle contends that he is entitled to post-conviction relief because he was not afforded credit for time served on his sentence of life in prison without the possibility of parole. He alleges that the failure of the court to grant credit for time served renders the sentence illegal.

> The PCRA provides the sole means for obtaining collateral review of a judgment of sentence. *Commonwealth v. Fowler*, 930 A.2d 586, 591 (Pa.Super.2007), *appeal denied*, 596 Pa. 715, 944 A.2d 756 (2008); 42 Pa.C.S.A. § 9542. "[A] court may entertain a challenge to the legality of the sentence so long as the court has jurisdiction to hear the claim. In the PCRA context, jurisdiction is tied to the filing of a timely PCRA petition." *Id.* at 592 (quoting *Commonwealth v. Berry*, 877 A.2d 479, 482 (Pa.Super.2005) ( *en banc* ), *appeal denied*, 591 Pa. 688, 917 A.2d 844 (2007)). "Although legality of sentence is always subject to review within the PCRA, claims must still first satisfy the PCRA's time limits or one of the exceptions thereto." *Fowler, supra.* Pennsylvania law makes clear no court has jurisdiction to hear an untimely PCRA petition. *Commonwealth v. Robinson,* 575 Pa. 500, 837 A.2d 1157 (2003). Thus, a collateral claim regarding the legality of a sentence can be lost for failure to raise it in a timely manner under the PCRA. *Commonwealth v. Wojtaszek*, 951 A.2d 1169, 1173 n. 9 (Pa.Super.2008), *appeal denied*, 600 Pa. 733, 963 A.2d 470 (2009).

*Commonwealth v. Infante,* 63 A.3d 358, 365 (Pa.Super. 2013). Shadle does not set forth any reason why he could not have raised this issue within one year of the date that the judgment of sentence became final. For this reason, this court has no jurisdiction to entertain the merits of this claim.

**NOW THEREFORE,** having determined that the court lacks jurisdiction to entertain the merits of Shadle's claims based upon the untimely filing of the instant PCRA Petition, the following Order shall enter:

13

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA – CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA  )
               )
    vs.          )  No.  1469 C 2006
               )
DAVID M. SHADLE,      )
       Defendant. )

## ORDER OF COURT

AND NOW, this ⟋⟍5‾ day of August, 2014, for the reasons set forth in the preceding Opinion, it is hereby **ORDERED** as follows:

1. For the reasons set forth in the foregoing Opinion, the defendant's *pro-se* Petition for Post-Conviction Relief filed pursuant to the Post Conviction Relief Act, (42 Pa.C.S. §9541, *et. seq.*) is hereby **DISMISSED.**

2. This court has determined that it lacks jurisdiction to entertain the merits of the defendant's *pro-se* PCRA petition, and therefore no further purpose would be served by affording the Defendant an evidentiary hearing. Further, having reviewed the comprehensive No-Merit Letter submitted by former PCRA Counsel James E. Robinson, Esq., and having previously determined that PCRA counsel satisfied the requirements of *Commonwealth v. Turner,* 518 Pa. 491, 544 A.2d 927 (1988) and *Commonwealth v. Finley,* 330 Pa.Super. 313, 479 A.2d 568 (1984) and having granted counsel's request to withdraw as PCRA counsel for the defendant, and having considered defendant's requests to afford him the time to hire private counsel, his request for court-appointed counsel is **DENIED.**

14

3.     THE DEFENDANT IS NOTIFIED THAT ANY APPEAL TO THE SUPERIOR COURT OF PENNSYLVANIA FROM THIS COURT'S DISMISSAL OF HIS SECOND *PRO-SE* PCRA PETITION MUST BE FILED WITHIN THIRTY (30) DAYS FROM THE DATE OF THIS ORDER OF COURT.

4.     The defendant is further advised that based upon this court's determination that former PCRA counsel satisfied the *Turner/Finley* requirements, he is not entitled to the assistance of court-appointed counsel should he elect to appeal this court's decision to dismiss his PCRA Petition and to permit PCRA counsel to withdraw. The defendant is free to proceed on appeal *pro-se* or with private counsel of his choice. ***Commonwealth v. Turner, supra; Commonwealth v. Maple,*** 385 Pa.Super. 314, 559 A.2d 953 (1989). Should he desire to pursue an appeal *pro-se,* he should also file the required Motion to Proceed *in forma pauperis* with this court.

BY THE COURT:

Rita Donovan Hathaway, Judge

ATTEST:

Clerk of Courts

cc:     File
        John W. Peck, Esq., District Attorney of Westmoreland County
        James E. Robinson, Esq., former PCRA Counsel for Defendant
        Pamela Neiderheiser, Esq., Court Administrator's Office
        James M. Shadle, Defendant (#HC-8564) –
                SCI Graterford, P.O. Box 244, Graterford, PA 19426-0244

15